STATE OF IOWA, Appellee, v. RAY CARTER, Appellant.

**SEDUCTION:** Elements—Insufficient Evidence. Record reviewed, and held insufficient to sustain a verdict of guilty, both from the standpoint of artifice and deception and of corroboration of the prosecutrix.

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

OCTOBER 23, 1923.

DEFENDANT was indicted, tried and convicted for the crime of seduction. From the judgment entered on the verdict, he appeals.—*Reversed.*

*George G. Yeaman,* for appellant.

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *O. T. Naglestad,* County Attorney, for appellee.

DE GRAFF, J.—But one pertinent question is presented by this appeal. Does the evidence establish beyond a reasonable doubt the essential elements of the crime charged? Incidental to this primary question, is there any corroborative evidence, either direct or circumstantial, which tends to connect the defendant with the commission of the offense? An appellate court will not arbitrarily say that a prosecutrix is not worthy of belief. *State v. Bouma,* 193 Iowa 283. It is our duty, however, to determine on the whole record whether the essential ingredients of the crime have been sustained. We should interfere if the verdict is clearly against the weight of the evidence. *State v. Carson,* 185 Iowa 568. In the instant case we unhesitatingly make answer.

The definitions of the word "seduction" etymologically and in the criminal sense are quite similar. The word literally means "to lead aside or astray," that is, from the straight path

of rectitude. To seduce is to entice with intent to induce the surrender of chastity, and under our statute the artifice, pretense or inducement must involve an unmarried woman of previously chaste character. Code Sections 4762 and 5488.

The only evidence disclosed by the record is the mere proof of opportunity on the part of the defendant to commit the crime charged. This is not enough. *State v. Smith*, 54 Iowa 743. There are other young men whose names are disclosed by the record who had equal opportunity with the defendant to do the act during the period that the offense is alleged to have been committed by the defendant. In brief, had the prosecutrix selected any one of her several male companions the probative facts could have imposed equal responsibility and criminality. We discover no word of corroboration of the testimony of the prosecuting witness, nor may it be said that any art or artifice was used by the defendant in effectuating his purpose as charged by the prosecutrix. There was no promise of marriage. There was no promise to shield or forever protect her in the event that a result occurred which in the nature of things both parties might reasonably expect. There were no presents given or received. When the defendant and the prosecutrix first met there was no formality of introduction. She did not learn his name until a subsequent meeting. They motored together in company with a girl friend of the prosecutrix and the male companion of the former. On five different occasions the defendant and prosecutrix were found in each other's company as testified by her, and on each of these occasions she submitted to the embraces of the defendant. These acts were voluntary on her part and the strongest testimony that savors of any inducement is found in her recital that on the second or third time that intercourse was had she said, "You don't love me any more, do you?" to which he replied, "Yes, I do or I wouldn't be here." This was nothing more than a hasty protestation of love provoked by the inquiry of the prosecutrix. Her associations with men certainly made her sufficiently familiar with the ways of men, and she understood the peril of permitting the taking of improper liberties with her from almost their first meeting.

Prior to the above conversation between them she does not claim that anything had ever been said to her concerning the

love of the defendant for her. In fact nothing had been said that would naturally tend to induce her fall from the high plane of morality or chastity. The love that had been manifested was of a licentious character, and the protestations quite casual and incidental.

We can reach but one conclusion on this record and in the absence of proof of artifice and deception on the part of the defendant in his lustful relations with the prosecutrix, and in the absence of any evidence of corroboration the judgment entered must be and is—*Reversed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.